

ENTERED
03/05/2018

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| CRAIG A. CHARLESTON, | § | CASE NO. 16-32113-H5-7 |
| Debtor, | § | |
| | § | |
| WALLIS STATE BANK, | § | |
| Plaintiff, | § | |
| v. | § | ADV. NO. 16-3236 |
| | § | |
| CRAIG A. CHARLESTON and GWENDOLYN L. LAVALAIS, | § | |
| Defendants. | § | |

## ORDER

Before the Court is the Plaintiff's Complaint to Determine Dischargeability of Certain Debts and for Determination of Money Judgment. In this consolidated adversary proceeding,[1] Wallis State Bank ("WSB") seeks to except Debtors' debt from discharge under Section 523(a)(2)(A) or 523(a)(2)(B) of the Bankruptcy Code. Plaintiff failed to prove Debtors' fraudulent intent. The Court determines that Debtors' debt to Plaintiff is dischargeable.

---

[1] WSB filed the complaint in Adversary No. 16-3236 against Charleston in this Court on October 25, 2016. WSB filed the complaint in Adversary No. 16-1012 against Lavalais in the Eastern District of Texas on November 22, 2016. The Eastern District transferred its adversary proceeding to this Court on January 23, 2017. This Court consolidated the two adversary proceedings into Adversary No. 16-3236 on February 16, 2017.

P:\charleston.20180305.wpd

I. Background

Craig Charleston and Gwendolyn Lavalais are medical doctors. Charleston, an anesthesiologist, operated a pain management clinic with 30-40 employees in Beaumont[2] from approximately 2002 until 2015. (Tr. 12/18/2017, at 149).[3] Charleston hired accountants to prepare the financial records of his medical practice. (Tr. 12/18/2017, at 142). After 2015, Charleston began working in a hospital pain practice. (Tr. 12/18/2017, at 178). Lavalais worked as an oncologist from approximately 2005 until 2011. (Tr. 12/18/2017, at 145).

Charleston began looking for business investments outside the health care industry in 2010. (Tr. 12/18/2017, at 142). He had worked as a restaurant manager prior to attending medical school. (Tr. 12/18/2017, at 138). He formed Lavaston Foods, LLC and opened a Papa John's pizza franchise in Lumberton. (Tr. 12/18/2017, at 154). Lavaston Foods, LLC hired a manager to run the business and hired accountants to prepare its financial records. (Tr. 12/18/2017, at 155). Lavaston Foods, LLC later purchased additional Papa John's franchises in Texas City, Alvin, and Bryan. (Tr. 12/18/2017, at 156-158). Although Lavaston Foods, LLC was losing money in 2012, Charleston continued to contribute his personal funds believing that it would require time to turn the business around. (Tr. 12/18/2017, at 160).

During 2012, Lavaston Foods, LLC had the opportunity to buy two additional Papa John's franchises, in Houston and Prairie View. (Tr. 12/18/2017, at 161-162). Charleston's brother, Dewayne Charleston, contacted WSB. (Tr. 12/18/2017, at 165-166). Three WSB personnel, including Sheila Patterson, WSB's loan officer, visited Charleston and Lavalais in

---

[2]All the cities identified in this Order are in Texas

[3]Transcript citations are to the amended transcript at Docket No. 49.

Beaumont. (Tr. 12/18/2017, at 11-12).

## II. The Loan Transaction

Patterson testified that Charleston sought a 10 year note to consolidate the debt of the existing Papa John's locations and to buy the new franchises in Houston and Prairie View. WSB was unwilling to make the requested loan but was willing to make a loan guaranteed by the United States Small Business Administration ("SBA") to finance the startup of the two new stores in Houston and Prairie View. (Tr. 12/18/2017, at 17). WSB required the formation of a new entity, Lavaston Foods #4165, LLC. (Tr. 12/18/2017, at 19).

On September 25, 2012, Debtors submitted financial statements for themselves and for Lavaston Foods, LLC (the parent of Lavaston Foods #4165, LLC) to WSB. The parties have stipulated that WSB is not seeking a determination of nondischargeability based on the September 25, 2012 financial statements.

On October 22, 2012, Lavaston Foods #4165, LLC, borrowed $590,000 from WSB; Debtors guaranteed the debt. Debtors' guaranty agreements required Debtors to provide WSB the following documents each year within 90 days after the end of their fiscal year: personal financial statements and a certificate stating that no default has occurred and disclosing all material changes in Debtors' net worth. (Exhibit 8, at 8-9; Exhibit 9, at 8-9).

## III. Debtors Breached Their Guaranty Agreements But Did Not Commit Fraud

WSB asserts Debtors defrauded it through the use of false financial statements dated August 27, 2013 and June 2, 2014. WSB asserts the 2013 and 2014 financial statements omitted Debtors' substantial tax liability.

During 2013 and 2014 Debtors' personal circumstances became complex. Debtors adopted two children. Charleston testified the adoption process required Debtors to submit substantial paperwork that could not be delegated and to attend several meetings. (Tr. 12/18/2017, at 175). Lavalais stopped her medical oncology practice in order to take care of the children. (Tr. 12/18/2017, at 240).

Charleston's mother was diagnosed with ovarian cancer during 2014. (Tr. 12/18/2017, at 188). Debtors assisted her in getting treatments, and Charleston's father additionally moved in with Debtors. Charleston testified that his father had had a stroke and was a burden on the family at that time. (Tr. 12/18/2017, at 189). He testified that his mother passed away during August 2014. (Tr. 12/18/2017, at 189).

During 2014, Lavaston Foods #4165, LLC closed the Prairie View Papa John's location. Charleston continued to make payments to WSB from personal funds. (Tr. 12/18/2017, at 183-184).

The Internal Revenue Service audited Debtors' federal income taxes for 2012. (Tr. 12/18/2017, at 176-177). The notice of examination was dated December 2, 2013. The audit took place on April 25, 2014, and was closed on July 6, 2015. (Exhibit 20, at 14). Charleston testified the audit revealed that the Papa John's locations had larger losses than he had known. He testified the IRS audit ultimately resulted in a tax credit for Debtors. (Tr. 12/18/2017, at 177).

Charleston testified the restaurants seemed to be doing worse in 2015. (Tr. 12/18/2017, at 190). He testified he continued contributing funds personally into the restaurant entities during 2015 to keep them afloat. (Tr. 12/18/2017, at 191).

Charleston's medical practice also suffered. Charleston testified Medicare conducted an audit of a sample of approximately ten of Charleston's patients and extrapolated its initial findings to seek a recoupment of approximately $280,000 from Charleston's practice. (Tr. 12/18/2017, at 177-178). After a long appeal process, Charleston's appeal of the recoupment was denied. (Tr. 12/18/2017, at 178).[4] Charleston left his medical practice during 2015 to work as an independent contractor in a hospital pain practice. (Tr. 12/18/2017, at 191-192). His reduced income made it difficult to repay the WSB loan. (Tr. 12/18/2017, at 192).

During 2015, Charleston and Lavalais started divorce proceedings. (Tr. 12/18/2017, at 192).

During the third quarter of 2015, Charleston began to pursue a sale of all of the stores. (Tr. 12/18/2017, at 192). During September 2015 he notified WSB of a potential sale of the Houston store. (Exhibit 21).

Debtors, Lavaston Foods, LLC, and Lavaston Foods #4165, LLC agreed to sell the remaining Papa John's locations to MANS Food Group, Inc. on October 12, 2015. (Exhibit 29). Charleston testified he received $150,000 at the signing of the agreement. (Tr. 12/18/2017, at 204). He testified the sale closed during the second quarter of 2016. (Tr. 12/18/2017, at 193).

Beginning January 26, 2016 Charleston sought a loan modification from WSB. Exhibit 22, at 1). On the same date WSB requested several documents regarding Lavaston Foods, LLC and Lavaston Foods #4165, LLC, and personal financial and cash flow statements for Debtors. (Exhibit 22, at 2).

---

[4]During 2015 or 2016 Charleston transferred the furniture of the medical practice to the person with whom he practiced in exchange for an assumption of the practice's debt. (Tr. 12/18/2017, at 178).

P:\charleston.20180305.wpd     5

Debtors provided personal financial statements dated August 27, 2013 and June 2, 2014 to WSB. WSB's loan officer, Sheila Patterson, testified she does not know when WSB actually received the personal financial statements. (Tr. 12/18/2017, at 69). Charleston testified Debtors provided both the 2013 and 2014 financial statements when Debtors applied for a loan modification in 2016. (Tr. 12/18/2017, at 195). Patterson testified that it is common in the banking industry not to get personal financial statements until a borrower needs something from WSB. (Tr. 12/18/2017, at 69). The Court infers from Patterson's email of January 26, 2016 requesting the 2013 and 2014 personal financial statements that WSB did not have those statements before January 26, 2016.

Charleston testified he believed the information he provided to WSB was truthful. (Tr. 12/18/2017, at 197). Charleston testified Debtors filed their 2013 tax return in October 2014 and their 2014 tax return in October 2015. Debtors filed both returns after the dates of the two financial statements at issue. Charleston testified he did not believe Debtors owed a significant amount of federal income tax until his accountant notified him in 2015. (Tr. 12/18/2017, at 199). Debtors' tax return for 2013 ultimately showed a tax due of $388,651.00. Debtors' tax return for 2014 showed a tax due of $326,606.00. (Exhibit 20).

Section 523(a)(2) excepts from discharge a debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing—

> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2).

The creditor must prove by a preponderance of the evidence that the debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

For a debt to be nondischargeable as a result of false representations or false pretense under § 523(a)(2)(A), the creditor must show (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party. *In re Jacobson*, 2007 WL 2141961 (5th Cir. 2007), *citing RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995).

Actual fraud has two parts: actual and fraud. The word actual has a simple meaning in the context of common-law fraud: It denotes any fraud that involves moral turpitude or intentional wrong. Actual fraud stands in contrast to implied fraud or fraud in law, which describe acts of deception that may exist without the imputation of bad faith or immorality. *Husky Int'l Elecs., Inc. v. Ritz*, --- U.S. ----, 136 S. Ct. 1581, 194 L.Ed.2d 655 (2016).

Fraudulent intent is an element of each of the subsections of Section 523(a)(2). WSB contends that Debtors' fraudulent intent arises from their submission of personal financial statements after the loan was made showing that no federal income taxes were due while Debtors owed federal income taxes. WSB contends that it did not exercise its remedies under the loan documents because of false financial statements dated August 27, 2013 and June 2, 2014.

The Court finds persuasive Debtors' explanation of the circumstances surrounding preparation and submission of the financial statements to WSB. Debtors had a complex personal and financial situation during 2013 and 2015 including adoption of two children, death of one parent, support of another disabled parent, an audit by Medicare which dramatically reduced Charleston's income, a change of Charleston's primary job, an audit by IRS, failing restaurants, and a divorce. Each of these produced extreme demands on Debtors' time. The Court finds WSB failed to prove that Debtors' failure to disclose their tax debt under these circumstances was made with an intent to deceive. Debtors' debt to WSB is dischargeable.

Signed at Houston, Texas on March 5, 2018.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE